IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANGELINE SHINGLES o/b/o T.S.S.,  )
                                  )
    Plaintiff,                    )
                                  )
v.                                ) CASE NO. 2:17-CV-00620-SMD
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social Security, )
                                  )
    Defendant.                    )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Angeline Shingles ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act") on behalf of T.S.S., a child under age 18, with an alleged disability onset date of January 1, 2009. (R. 10). Plaintiff's application was initially denied on July 14, 2014. *Id.* Plaintiff filed a written request for a hearing. *Id.* The Administrative Law Judge ("ALJ") held a hearing on June 14, 2016, and ultimately denied Plaintiff's claim. (R. 10-24). The Appeals Council denied Plaintiff's request for review on July 27, 2017. (R. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 11); Def.'s Consent to Jurisdiction (Doc. 10). After careful scrutiny

of the record and briefs, and for reasons herein explained, the Court concludes that the Commissioner's decision is to be AFFIRMED.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906 (same). The individual who seeks Social Security disability benefits must prove that he or she is disabled. 42 U.S.C. § 1382c(a)(3)(H)(i) (rendering the provisions from 42 U.S.C. § 423(d)(5) applicable to SSI

disability applications, which places burden on claimant to prove disability); *see also* 20 C.F.R. § 416.912(a).

"Federal regulations set forth the process by which the [Social Security Administration] determines if a child is disabled and thereby eligible for disability benefits." *Shinn ex rel. Shinn v. Comm'r,* 391 F.3d 1276, 1278-1279 (11th Cir.2004). Under the regulations, this process begins with the Commissioner determining whether the child is "doing substantial gainful activity." If the child is performing substantial gainful activity, the child is considered "not disabled" and is ineligible for benefits. 20 C.F.R. § 416.924(a), (b).

If the child is not engaged in substantial gainful activity, the Commissioner next considers whether the child's "physical or mental impairment(s)" alone or in combination with other impairments are severe. 20 C.F.R. § 416.924(a), (c). An impairment will be considered in a disability application only if it arises from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. Thus, an impairment "must be established by medical evidence." *Id.*; *see also* 20 C.F.R. § 416.913(a) (the Commissioner "need[s] evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)"). In contrast, non-medical evidence, including the testimony of "[e]ducational personnel" and "parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy," may be used to demonstrate that a child's impairment is severe. 20 C.F.R. §§ 416.913(d)(2), (4), 416.924a(a)(2).

If the child has a severe impairment or impairments, the Commissioner next assesses

whether the impairment "causes marked and severe functional limitations" for the child. 20 C.F.R. §§ 416.911(b), 416.924(d). The Commissioner uses objective criteria listed in the Code of Federal Regulations ("C.F.R.") to determine whether the impairment causes severe and marked limitations. "The C.F.R. contains a Listing of Impairments ["the Listings," found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn,* 391 F.3d at 1278 (citing 20 C.F.R. § 416.925(a)). "For each impairment, the Listings discuss various limitations on a person's abilities that [the] impairment may impose. Limitations appearing in these listings are considered 'marked and severe.'" *Id.* 23 A child's impairment will cause "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." 20 C.F.R. § 416.911(b)(1); *see also* §§ 416.902, 416.924(a). The limitations "meet" a Listing if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. The limitations "medically equal" a Listing if the child's limitations "are at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 416.926(a)(2).

Finally, if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the Commissioner examines whether the impairment is "functionally equivalent" to those in the Listings. *Shinn ex rel. Shinn,* 391 F.3d at 1279. To make this determination, the Commissioner examines the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

5

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for [one]self; and

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The C.F.R. contains various "benchmarks" that children should have achieved by certain ages in each of these life domains. *See* 20 C.F.R. § 416.926a(g)-(*l* ). A child's impairment is "of listing-level severity," and so "functionally equals the listings," if as a result of the limitations stemming from that impairment the child has "'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(d); *see also* 20 C.F.R. § 416.925(a).

If the limitations stemming from a child's severe impairment meet, medically equal, or functionally equal the limitations specified in the Listings, the ALJ then examines whether the impairment "meets the duration requirement." 20 C.F.R. § 416.924(a). An impairment meets this duration requirement if it "[is] expected to cause death or . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 416.906, 416.909.

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

T.S.S. was a school-aged child at the alleged onset date and when the ALJ made her decision. (R. 13). Plaintiff, on behalf of T.S.S., filed an application for supplemental security income with an alleged disability onset date of January 1, 2009, (R. 10), due to

6

attention deficit hyperactivity disorder ("ADHD"), bipolar, and being a slow learner. (R. 87).

At step one of the three-step process, the ALJ found that T.S.S. had not engaged in substantial gainful activity since the application date of May 27, 2014. (R. 13). At step two, the ALJ found that T.S.S. had ADHD, but concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R. 13-14). In coming to this conclusion, the ALJ considered "all of the relevant evidence in the case record," including medical evidence; information from teachers, family members, and friends of T.S.S.; statements from T.S.S. and her parents and caregivers; and other relevant evidence within the record, including how T.S.S. functions over time and in various settings, such as at home, at school, and elsewhere in the community. *Id.*

The ALJ considered T.S.S.'s limitations in the six functional equivalence domains—acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. (R. 15-22). In determining these limitations, the ALJ considered T.S.S.'s symptoms and the consistency between the symptoms and the other evidence offered in the case. (R. 14). In considering these symptoms, the ALJ followed a two-step process: first, determining "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [T.S.S.'s] pain or other symptoms" and second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce [T.S.S.'s] pain or other

symptoms has been shown . . . evaluat[ing] the intensity, persistence, and limiting effects of [T.S.S.'s] symptoms to determining the extent to which they limit [T.S.S.'s] functioning." *Id.*

The ALJ concluded that T.S.S.'s "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 15). Plaintiff alleged that T.S.S. is a slow learner, is behind is school, struggles to focus and follow direction, does not communicate well, has behavioral issues, and was absent from school 48 times during the 2015-2016 school year. (Doc. 12) at 3-10. The ALJ found, however, that other evidence in the record indicated that T.S.S. made good grades, behaved well, was happy and alert, and had a good attention span and normal cognition. (R. 15). In regard to the six functional equivalence domains, the ALJ found that T.S.S. had a less than marked limitation in interacting and relating with others and no limitations in acquiring and using information, attending and completing tasks, moving about and manipulating objects, caring for oneself, and health and physical well-being. (R. 15-22). The ALJ therefore concluded that T.S.S. is not disabled. (R. 23).

### V. PLAINTIFF'S ARGUMENTS

Plaintiff identifies the following two issues in her "Statement of the Issues:"

> 1) The Commissioner's decision should be reversed because the ALJ erred by assigning great weight to the State agency's assessment [ ] which conflicts with the evidence of record, including the teacher questionnaires of Ms. Goff and Ms. Morris.

2) The Commissioner's decision should be reversed because the ALJ erred by failing to fulfill the Commissioner's duty to develop the record.

(Doc. 12) at 3.

## VI. ANALYSIS

**A. The ALJ properly weighed the assessments of the State agency consultants.**

Plaintiff argues that the ALJ erred by assigning great weight to the State agency consultants' assessments, which Plaintiff alleges conflicts with the evidence in the record. *See generally* (Doc. 12) at 3-10. As to the alleged conflicts in the record, Plaintiff asserts that the opinions of the consulting physicians conflict with the teacher questionnaires provided by Ms. Goff and Ms. Morris. *Id.* at 3. Plaintiff also contends that Dr. Estock, a State agency consulting physician, in formulating his opinion regarding T.S.S.'s abilities, did not consider any school records or treatment notes provided by the Eufaula Pediatric Clinic. *Id.* at 4-6. Additionally, Plaintiff asserts that the consulting physicians were psychiatrists and should not have been qualified to render opinions as to T.S.S.'s abilities within certain domains—namely the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. *Id.* at 9.

The regulations require that an ALJ consider the opinions of non-examining physicians, including state agency psychological consultants. 20 C.F.R. § 404.1527(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and its consistency with other evidence. *See id.* § 404.1527(c)(3)-(4); *see also Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a

consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. § 404.1527(c)(4); *see also Putman v. Social Security Admin., Comm'r*, 709 F. App'x 929, 932 (11th Cir. 2017). The Court cannot reweigh the evidence before the ALJ. Instead, the Court must give substantial deference to the Commissioner's decision when there is substantial evidence to support it. *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).

Here, the undersigned finds that there is substantial evidence in the record supporting the ALJ's decision to afford "great weight" to the opinions of the consulting physicians, Drs. Estock and Williams, because their opinions were consistent with the record as a whole. Drs. Estock and Williams both opined that T.S.S. had less than marked limitation in the domain of interacting and relating with others and no limitation in the other domains. (R. 1-18, 20, 22-23, 90-91). The record as a whole supports those opinions.

1. *The ALJ's Assessment of the Six Domains.*

a. *Interacting and Relating with Others.*

In the domain of interacting and relating with others, the ALJ determined that T.S.S. has less than marked limitation. (R. 18-20). The ALJ considered the testimony of T.S.S.'s mother indicating that she did not or could not generally get along with her or other adults, play team sports, repeat stories she heard, or talk with friends. *Id.* The mother further testified that T.S.S. had difficulty communicating with her teacher, acted out in school, and often received demerits in school. *Id.* The ALJ further considered T.S.S.'s testimony that she did not get along with the other students in her class and got in trouble for talking back

and rolling her eyes. *Id.* Additionally, the ALJ considered the opinion of Ms. Morris who wrote that T.S.S. had a hard time making and keeping friends, she generally did not get along with her teachers or other adults, and was very quick to lash out at others. *Id.* The ALJ also considered the opinion of Ms. Goff, who indicated that T.S.S. did not respect authority or rules, argued with classmates, had a behavior plan, and was put in "time-out" for not following directions. *Id.*

However, the ALJ considered other testimony from T.S.S.'s mother indicating that T.S.S. did have friends her own age, could make new friends, and generally got along with her school teachers. *Id.* The mother also indicated that T.S.S. could deliver telephone messages, tell jokes or riddles accurately, explain why she did something, and talk with family. *Id.* The mother further testified that T.S.S. was sometimes able to follow rules, liked her teachers, and had three friends. *Id.* The ALJ also noted that Ms. Morris indicated that T.S.S.'s ability to communicate was not limited and had a "B" grade in conduct during the first nine weeks of third grade. *Id.* Finally, the ALJ noted T.S.S.'s normal behavior and cooperativeness on multiple examinations. *Id.*

Having reviewed the record as a whole and considered the evidence specifically referenced by the ALJ in assessing T.S.S.'s abilities within the domain of interacting and relating to others, the undersigned concludes that substantial evidence supports the ALJ's finding that T.S.S. has less than marked limitation in this area.

b. *Acquiring and Using Information.*

In the domain of acquiring and using information, the ALJ determined that T.S.S. had no limitation. (R. 16-17). In so doing, the ALJ considered T.S.S.'s mother's function

11

report, in which she indicated that T.S.S. did not or could not read and understand simple sentences, write in longhand, add and subtract numbers over ten, etc. (R. 16). The ALJ also considered T.S.S.'s "D" average grades as well as Ms. Goff's teacher questionnaire, which indicated that T.S.S. was on a first to second grade reading level, was on a second grade math and written language level, received special education services four days a week for 30 minutes for reading and math, received extra help throughout the day, and had extreme difficulty with school work. (R. 16). Additionally, the ALJ considered that T.S.S. has had an Individualized Education Program ("IEP") and complaints of learning difficulties on her behalf. (R. 16).

However, the ALJ also considered evidence from T.S.S.'s mother that T.S.S. could read simple words, print some letters, spell three and four-letter words, write a simple story with six or seven sentences, etc. (R. 17). She also considered T.S.S.'s testimony that she understood her teachers, enjoyed math, enjoyed reading books, and had an "A" in reading. (R. 16). This evidence of T.S.S.'s ability to function in this domain was bolstered by a function report from Ms. Morris, which indicated that T.S.S. could read and understand stories in books and magazines, add and subtract numbers over ten, and recite the days of the week and months of the year. (R. 16). Importantly, the ALJ noted that Ms. Goff's assessment regarding T.S.S.'s abilities, which set forth T.S.S.'s challenges in this domain, was predicated upon a belief that T.S.S.'s excessive absenteeism had directly affected her performance in the classroom, and that she had fallen behind the other students because her mother had not picked up her work during her numerous absences. (R. 17).

Having reviewed the record as a whole and considered the evidence specifically

referenced by the ALJ in assessing T.S.S.'s abilities within the domain of acquiring and using information, the undersigned concludes that substantial evidence supports the ALJ's finding that T.S.S. has no limitation in this area.

*c. Attending and Completing Tasks.*

In the domain of attending and completing tasks, the ALJ determined that T.S.S. had no limitation. (R. 18). In so finding, the ALJ noted that T.S.S.'s mother indicated that she could not keep busy on her own or finish things she started, could not complete her homework or chores, and had trouble focusing and maintaining attention and following directions. (R. 18). Further, the ALJ considered Ms. Morris's report that T.S.S. could not keep busy on her own, finish things she started, or work on arts and crafts. (R. 18). The ALJ also considered Ms. Goff's report that T.S.S. accomplished little while she was in school because she constantly put her head on her desk and complained that she was sick. (R. 18). The ALJ noted Ms. Goff's opinion that T.S.S. had a number of very serious problems in this domain. (R. 18).

However, the ALJ also considered T.S.S.'s mother's testimony that T.S.S. did her homework and that she sometimes was able to complete chores. (R. 18). The ALJ also pointed to T.S.S.'s own testimony, which indicated that she spent a couple hours doing homework; that she completed chores such as making her bed, taking out the trash, sweeping, and mopping; and that she enjoyed math and reading books. (R. 18). The ALJ further noted that T.S.S.'s alertness and attention span were assessed as good upon examination. (R.18).

Having reviewed the record as a whole and considered the evidence specifically

13

referenced by the ALJ in assessing T.S.S.'s abilities within the domain of attending and completing tasks, the undersigned concludes that substantial evidence supports the ALJ's finding that T.S.S. has no limitation in this area.

*d. Moving About and Manipulating Objects.*

In the domain of moving about and manipulating objects, the ALJ determined the T.S.S. had no limitation. (R. 20). The ALJ based her determination on the uncontradicted reports of T.S.S.'s mother, Ms. Morris, and Ms. Goff, who all indicated that T.S.S. had no limitations in this domain. *Id.*

Having reviewed the record as a whole and considered the evidence specifically referenced by the ALJ in assessing T.S.S.'s abilities within the domain of moving about and manipulating objects, the undersigned concludes that substantial evidence supports the ALJ's finding that T.S.S. has no limitation in this area.

*e. Caring for One's Self*

In the domain of caring for one's self, the ALJ determined that T.S.S. had no limitation. (R. 21). In so concluding, the ALJ considered the testimony of T.S.S.'s mother, who said that T.S.S. did not or could not take a bath or shower without help; comb or brush her hair; wash her hair on her own; help around the house; or obey safety rules. (R. 21). The ALJ also considered Ms. Goff's opinion that T.S.S. had some serious and very serious problems in this domain, and that complaints regarding T.S.S.'s sleep disturbance and poor appetite have been made. (R. 21).

However, the ALJ also considered that T.S.S.'s mother indicated that T.S.S. did or could use a zipper, button her clothes, tie her shoelaces, brush her teeth, eat by herself, put

14

away her toys, and sometimes follow the rules. (R. 21). The ALJ also noted T.S.S.'s testimony that she performed chores at home, did a couple hours of homework, and enjoyed math and reading. (R. 21-22).

Having reviewed the record as a whole and considered the evidence specifically referenced by the ALJ in assessing T.S.S.'s abilities within the domain of caring for herself, the undersigned concludes that substantial evidence supports the ALJ's finding that T.S.S. has no limitation in this area.

*f. Health and Physical Well-Being*

Finally, in the domain of health and physical well-being, the ALJ found that T.S.S. had no limitation. (R. 18). The ALJ considered testimony from T.S.S.'s mother that she had been absent from school due to illness and that her medications caused dry mouth, thirst, nervousness, and a racing heart. (R. 18). The ALJ also considered Ms. Goff's report setting forth the same. (R. 18). However, the ALJ noted that, of T.S.S.'s 46 absences from school, 34 did not correlate with any medical appointments or visits on those dates. (R. 12). Of the remaining 12, the ALJ noted that 3 were for lab work and/or imaging, and that 7 of the visits produced physical examination results that were entirely normal. (R. 18).

Having reviewed the record as a whole and considered the evidence specifically referenced by the ALJ in assessing T.S.S.'s abilities within the domain of health and physical well-being, the undersigned concludes that substantial evidence supports the ALJ's finding that T.S.S. has less than marked limitation in this area.

2. *The ALJ Weighing of the Opinion Evidence*

Having concluded that substantial evidence supports the ALJ's conclusion that

T.S.S. was not limited in five domains and had less than marked limitations in one domain, the undersigned cannot find that the ALJ erred in affording great weight to the opinions of the consulting physicians because they were contrary to the record. To be sure, there are discrepancies between the doctors' opinions and the non-medical opinions of Ms. Goff and Ms. Morris. However, Plaintiff has not pointed the undersigned to any persuasive caselaw to indicate that the ALJ should have considered the non-medical opinions of T.S.S.'s teachers over the medical opinions of Drs. Estock and Williams. This is particularly so considering that, under these circumstances, the undersigned has concluded that substantial evidence supports the ALJ's conclusions regarding T.S.S.'s abilities in the six domains.

Plaintiff's attempts to persuade the undersigned otherwise fail. Plaintiff argues that Dr. Estock did not consider any treatment records from the Eufaula Pediatric Clinic in formulating his opinion that T.S.S. had no limitations in her health and physical well-being. (Doc. 12) at 4-6. However, the ALJ did consider T.S.S.'s medical records throughout her assessment of T.S.S.'s limitations in the relevant domains. It is the ALJ's job—not Dr. Estock—to determine Plaintiff's limitations in the six domains. There is nothing before the Court that would indicate that the ALJ simply adopted the consulting physicians' opinions without doing her own examination of T.S.S.'s records. Further, assuming *arguendo* that the ALJ erred in assessing T.S.S. in this domain, Plaintiff has not shown that the ALJ's error was anything more than harmless. Because T.S.S. must be found to have at least marked limitations in two of the domains or extreme limitations in one domain in order to be considered disabled, the undersigned would need to conclude (1) that Dr. Estock failed to consider T.S.S.'s treatment records from the Eufaula Pediatric Clinic; (2) that, had

he considered those records, he would have determined T.S.S. was extremely limited in the domain; and (3) that the ALJ would have then adopted Dr. Estock's limitation in that area. Such an argument is not raised by Plaintiff.

In the same fashion, Plaintiff's suggestion that the consulting physicians' opinions should not have been considered in determining T.S.S.'s limitations in certain domains because they are psychiatrists fails. Both Drs. Estock and Williams are medical doctors, making them qualified to provide a medical opinion regarding T.S.S.'s limitations. Of course, because of their specialty, their opinions regarding T.S.S.'s psychiatric issues should be afforded more weight than someone who is a non-specialist in that area. However, the fact that they are specialized physicians does not mean that their opinions in other areas should be disregarded.

Thus, the undersigned concludes that there is substantial evidence to support the ALJ's determination that T.S.S. is not disabled under the statute. Further, the undersigned finds no error in the ALJ affording the opinions of Drs. Estock and Williams great weight.

**B. The ALJ properly developed the record.**

Plaintiff asserts that the ALJ failed to properly develop the record because the record did not contain the most recent progress reports from the Eufaula Pediatric Clinic, nor did it contain T.S.S.'s IEP, which documented the disability and the test scores used to determine T.S.S.'s eligibility for special education services. (Doc. 12) at 10-11.

A claimant has the ultimate responsibility to prove a disability. 20 CFR § 416.912(a). However, an ALJ has a duty to "develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). "This duty is heightened

17

when the claimant is not represented by counsel in the administrative proceedings." *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 872 (11th Cir. 2016) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Kelley v. Heckler*, 761 F.2d 1538, 1540 & n.2 (11th Cir. 1985)). To demonstrate the need for remand based upon an ALJ's failure to develop the record, Plaintiff must show prejudice. *Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 951 (11th Cir. 2010). Prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record is reaching his decision." *Kelley*, 761 F.2d at 1540 (citing *Smith v. Schweiker*, 677 F.2d 826, 829-30 (11th Cir. 1982)). In reaching that conclusion, the court must be guided by whether the record reveals "evidentiary gaps which result in unfairness or clear prejudice." *Coven,* 384 F. App'x at 951 (quoting *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997)).

Here, Plaintiff was represented by counsel during the administrative proceeding. (R. 110-12, 183-84). Therefore, there was no heightened duty for the ALJ to develop the record. Further, the undersigned concludes that the ALJ had sufficient evidence available to assess T.S.S.'s claim. The record contains teacher questionnaires (R. 200-07, 293-99); a statement from Ms. Morris (R. 218); function reports (R. 208-17, 230-38); disability reports (R. 219-27, 247-56); school records, (R. 280-83); educational records (R. 288-91); multiple medical records, (R. 300-533); and other documents. Additionally, the ALJ developed the record during the hearing. (R. 43-60). Importantly, the ALJ specifically asked about T.S.S.'s IEP during the hearing. (R. 48). Nonetheless, regardless of the fact that the ALJ may not have had all the evidence before her regarding T.S.S.'s records,

18

Plaintiff fails to demonstrate any prejudice. Instead, she merely contends that the lack of the IEP and medical records created an "evidentiary gap" that the ALJ should have developed. (Doc. 12) at 11. However, Plaintiff did not attempt to show how this additional evidence would have changed the ALJ's findings or how it prejudiced her case in any manner.

Plaintiff cites *Jenkins v. Colvin*, No. CA 2:12-00465-N, 2013 WL 3465190, at *4 (S.D. Ala. July 10, 2013), to support her statement that "[t]he lack of special education records . . . and current mental health records documents an evidentiary gap in which the ALJ had a duty to develop before issuing her non-disability finding." In *Jenkins*, however, the court found that the ALJ "skirt[ed] his affirmative duty to develop a full and fair record" when he did not order the taking of objective medical evidence after both the claimant's counsel and a consulting physician, during a hearing before the ALJ, requested that this objective evidence be taken. *Id.* at *5. The court noted that, "in determining whether remand is appropriate in cases such as this one, the Court must balance an ALJ's duty to develop a full and fair record against a claimant's responsibility to prove disability." *Id.* at *6.

In *Jenkins*, where the ALJ failed to take objective medical evidence after it was requested and then relied partly on the lack of medical evidence to conclude that the claimant was not disabled, the court chose to "tip the balance in favor of remand." *Id.* Conversely, in this case, neither Plaintiff's counsel nor any consulting physicians requested additional medical evidence. At the hearing, Plaintiff's counsel had the opportunity to object to the completeness of the record, and made no objection. (R. 43-60). Again, when

19

Plaintiff requested review from the Appeals Council, she failed to raise this issue. (R. 4, 31, 33, 186). Thus, the present case is distinguishable from *Jenkins*, and there is no evidence to show that the balance between the ALJ's duty to develop the record and Plaintiff's duty to prove T.S.S.'s disability tips in favor of Plaintiff.

Therefore, the undersigned concludes that the ALJ did not fail to properly develop the record.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision.

A separate judgment will be entered.

DONE this 26th day of March, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE